**Scott Oborne, OSB #062333**
obornes@jacksonlewis.com
**Joanna R. Brody, OSB #102034**
joanna.brody@jacksonlewis.com
Jackson Lewis LLP
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (facsimile)
ATTORNEYS FOR DEFENDANT

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| JOHN ALLEN GORDON,<br><br>Plaintiff,<br><br>vs.<br><br>KLEINFELDER WEST, INC.,<br><br>Defendant. | Case No.:  3:11-cv-00245-HU<br><br>**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

DEFENDANT'S MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     STATEMENT OF FACTS .................................................................................... 1

        A.      Plaintiff Performed Site Work for EverPower Wind Holdings ................... 1

        B.      Plaintiff Was Terminated For Performance Issues ..................................... 3

        C.      Plaintiff Attempts to Acquire Confidential Kleinfelder Information ........... 4

        D.      The Police Reject Plaintiff's Claim Against Stroud and Instead Pursue

                Kleinfelder's Claim Against Plaintiff ........................................................ 6

III.    LEGAL ARGUMENT .......................................................................................... 8

        A.      Summary Judgment Standard ..................................................................... 8

        B.      Plaintiff Cannot Establish His Defamation Claim As A Matter of Law ...... 8

                1.      There is No Evidence to Suggest, Let Alone Establish As A Matter Of

                        Law, that Kleinfelder Defamed Plaintiff to EverPower ................... 9

                2.      There Is No Evidence to Suggest, Let Alone Establish As A Matter Of

                        Law, that Kleinfelder Defamed Plaintiff to Potential Employers ...... 10

                3.      The Alleged Defamatory Statements Were True ............................. 10

                4.      Kleinfelder's Statements to EverPower About Plaintiff Were Privileged . 12

        C.      Plaintiff is Unable to Establish His Malicious Prosecution Claim As A Matter of

                Law ........................................................................................................... 15

                1.      Plaintiff Cannot Establish That Kleinfelder Had the Requisite Malice in

                        Filing a Criminal Complaint Against Plaintiff .............................. 15

                2.      Kleinfelder Had Probable Cause to File a Criminal Complaint Against

                        Plaintiff for Theft of Kleinfelder Property .................................... 16

        D.      Plaintiff is Unable to Establish As A Matter of Law That Kleinfelder Converted

                His Property .............................................................................................. 18

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

|  |  | 1. | Kleinfelder Does Not Have Control Over Plaintiff's Address Book | 19 |
|  |  | 2. | Plaintiff Does Not Have a Right of Control Over Any Data on His Kleinfelder Work Computer | 19 |
|  | E. | | Defendant Has Adduced Evidence Raising An Issue of Fact As To Its Conversion Claim | 21 |
|  | F. | | Defendant Has Adduced Evidence Raising An Issue of Fact As To Its Breach Of Contract Claim | 23 |
|  | G. | | There is Dispute of Fact As To Defendant's Oregon Uniform Trade Secrets Act Claim | 26 |
|  | H. | | There is An Issue of Fact As To Defendant's Defamation Claim | 28 |
| IV. | | | CONCLUSION | 30 |

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

# TABLE OF AUTHORITIES

## Cases

*AcryMed, Inc. v. ConvaTec*, 317 F. Supp. 2d 1204 (D. Or. 2004)..........................................27, 28

*Affolter v. Baugh Construction Oregon, Inc.*, 183 Or. App. 198 (2002) ...............................12, 29

*Becker v. Pac. Forest Indus.*, 229 Or. App. 112, 211 P.3d 284 (2009) ..................................18, 21

*Blocker v. Wells Fargo Bank*, 2010 Dist. LEXIS 142501 (D. Or. Nov. 23, 2010)..........11, 12, 13

*Casey v. Lewis*, 4 F.3d 1516 (9th Cir. 1993)...............................................................................10

*Castle v. Orenco Sys.*, 2010 U.S. Dist. 129702 (D. Or. Dec. 3, 2010) ......................................19

*Cook v. Safeway Stores, Inc.*, 266 Or. 77, 511 P.2d 375 (1973)...............................................29

*Gowin v. Heider*, 237 Or. 266, 386 P.2d 1 (1964) ....................................................................20

*Gustafson v. Payless Drug Stores*, 269 Or. 354, 525 P.2d 118 (1974)...........................15, 16, 18

*Hickey v. Settlmier,* 318 Or. 196, 864 P.2d 372 (1993) ..........................................................8, 11

*Hutchinson v. Menlo Logistics, Inc.*, 2006 U.S. Dist. LEXIS 1957 (D. Or. 2006).....................28

*In re Wyllie*, 331 Or. 606, 19 P.3d 338 (2001).........................................................................18

*Justmed, Inc. v. Byce*, 600 F. 3d 1118 (9th Cir. 2009)..............................................................20

*L&D of Oregon v. American States Insurance Co.*, 171 Or. App. 17, 14 P.3d 617 (2000) .........29

*Lansford v. Georgetown Manor, Inc.*, 192 Or. App. 261, 84 P. 3d 1105 (2004).........................11

*McFarlin v. Gormley*, 2008 U.S. Dist. LEXIS 10541 (D. Or. Feb. 12, 2008)......................13, 14

*Mustola v. Toddy*, 253 Or. 658, 456 P.2d 1004 (1969)....................................................18, 21, 23

*Naas v. Lucas*, 86 Or. App. 406, 739 P.2d 1051 (1987)..................................................18, 19, 21

*Palominos v. Wal-Mart Stores, Inc.,* 2010 U.S. Dist. LEXIS 74050

    (D. Or. May 10, 2010) ....................................................................................15, 16, 17

*Perry v. Rein*, 215 Or. App. 113, 168 P. 3d 1163 (Or. Ct. App. 2007) ......................................16

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'
MOTION FOR PARTIAL SUMMARY JUDGMENT - iii

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

*Rogers v. Hill*, 281 Or. 491, 576 P.2d 328 (1978) ........................................................ 16

*Sabet v. Intel Corp.*, 2009 U.S. Dist. LEXIS 4922 (D. Or. Jan. 22, 2009) .................... 16

*Strain v. Alcan Cable Corp.*, 2010 U.S. Dist. LEXIS 129698 (D. Or. Dec. 3, 2010)....... 10, 13, 15

*T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 800 F.2d 626 (9th Cir. 1987) ...... passim

*W. Med. Consultants, Inc. v. Johnson*, 835 F. Supp. 554 (D. Or. 1993)....................................... 27

*Wallulis v. Dymowski*, 323 Or. 337, 918 P.2d 755 (1996)............................................................ 13

*Walsh v. Consolidated Freightways,* 278 Or. 347, 563 P.2d 1205 (1977) .................................... 13

*Worley v. Oregon Physician's Serv.,* 69 Or. App. 241, 686 P.2d 404 (1984) ............................ 13

**Statutes**

Fed. R. Civ. P. 56 (c)(4)............................................................................................................ 10

Fed. R. Civ. P. 56(c) ...................................................................................................... 8, 22, 29

ORS 646.641................................................................................................................................ 27

**Statutes**

Restatement (Second) of Torts § 222A (1965) .................................................................... 18, 21

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

Defendant Kleinfelder West, Inc., ("Kleinfelder") respectfully submits the following Memorandum in Opposition to Plaintiff's Motion for Summary Judgment (the "Motion").

## I.    INTRODUCTION

Defendant Kleinfelder has a pending motion for summary judgment which it believes should be granted.  Plaintiff, apparently believing the old adage that the best defense is a good offense, has also moved for summary judgment.  Plaintiff's motion should be denied in its entirety, particularly given the summary judgment standards at issue and the inadmissible nature of Plaintiff's assertions.

Plaintiff has not shown Defendant made any defamatory statement.  The subject statements were true and privileged.  Similarly, there was no malicious prosecution.  Kleinfelder filed a good faith criminal complaint to secure the return of its property.  There was also no conversion, as Kleinfelder simply exercised dominion over its computer network, and an issue of fact exists as to whether the claimed computer files were ever even on Kleinfelder's system.

As made clear through Defendant's extensive witness testimony, there are multiple triable issues with respect to each counterclaim that make summary judgment against Defendant improper.  As for Kleinfelder's conversion claim, there is a dispute of fact as to whether Plaintiff took Defendant's property.  Likewise, because Plaintiff contests the proprietary value of the property at issue, there remains a triable issue as to Defendant's statutory claim.  The parties also diverge wildly with respect to Defendant's contractual claim.  Finally, Plaintiff's defamatory comments about Kleinfelder present a question of fact that should be decided by a jury.

## II.    STATEMENT OF FACTS

### A.    Plaintiff Performed Site Work for EverPower Wind Holdings

Kleinfelder is a nationally-based science, architecture, and engineering consulting firm. (Declaration of Abraham Izen in Support of Defendant's Motion for Summary Judgment ("Doc. 29") ¶ 2.)  In April 2008, Kleinfelder hired Plaintiff as a Civil Design Specialist, which involved

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 1

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

Plaintiff performing civil site design and plan development.  (Doc. 29, ¶ 4; Plaintiff's Deposition ("Pl.'s Dep.") 78:8-13, Ex. 2, attached as Ex. A to the Declaration of Scott Oborne ("Oborne Decl."), filed herewith.)   Plaintiff signed Kleinfelder's Employee Covenants Agreement ("Agreement") which contained confidentiality, non-solicitation, and non-disparagement clauses. (Pl.'s Dep. 76:21-77:12, Ex. 4.)   Plaintiff spent significant time working on a wind farm development project for Kleinfelder's client EverPower Wind Holdings, Inc. ("EverPower").[1] (Pl.'s Dep. 153:12-17.)   Beginning in January 2010, Kleinfelder employee Peter Stroud ("Stroud") became Project Manager for the EverPower Project and in that capacity served as Plaintiff's direct supervisor on the EverPower Project.  (Declaration of Peter Stroud in Support of Defendant's Motion for Summary Judgment ("Doc. 34") ¶ 3.)

The EverPower Project involved potentially repurposing a logging tract into a wind farm. (Declaration of Blair Loftis in Support of Defendant's Motion for Summary Judgment ("Doc. 30") ¶ 3.)  As part of Plaintiff's work on the EverPower Project, he took part in a feasibility study to assess what type of vehicles could traverse existing roadways at the EverPower Project site.  (Pl.'s Dep. 149:5-12.)  Plaintiff spent two days at the tract obtaining information about culvert locations and the general condition of culverts in the tract.  (Id. at 155:21-156:9, 161:14-16.)   On the second day, Plaintiff was accompanied by Kleinfelder drafter, Taran Kratz ("Kratz"). (Id. at 161:17-21; 171:9-10.)  While on site, Plaintiff recorded culvert locations on a GPS device.  (Id. at 156:4-157:22, 162:12-24.)  He also made handwritten notes regarding the culverts (the "Project Notes"), which he was supposed to transfer onto the Kleinfelder computer network.  (See Id. at 156:4-157:22, 162:12-24, 164:14-19, 167:11-17.)

---

[1]     For ease of reference, the EverPower wind power development project will be referred to as the "EverPower Project".  In 2010, Plaintiff spent approximately 75% of his time working on the EverPower Project.  (Pl.'s Dep. 153:12-17.)

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

### B.    Plaintiff Was Terminated For Performance Issues

During his two years with Kleinfelder, Plaintiff's behavior consistently fell below expectations.  (Doc. 29, ¶ 5.)  He received several performance warnings, including two written warnings about his uncooperative behavior, and verbal warnings about his behavior and his resistance to being managed by Stroud and Loftis.[2]  (Id.; Doc. 30, ¶ 4.)  On January 24, 2010, Loftis sent an email regarding Gordon's deficient performance to Abraham Izen ("Izen"), Office Manager of Kleinfelder's Beaverton Office.  (Doc. 29, ¶ 6; Doc. 30, ¶ 6, Ex. A.)  Specifically, Loftis complained that Gordon had a poor attitude, refused to cooperate with other EverPower Project team members, and was unwilling to accept appropriate supervision.  (Id.)

After considering Loftis' remarks in light of the existing written discipline, Izen decided to terminate Plaintiff's employment.  (Doc. 29, ¶ 7.)  On February 2, 2010, Izen and Stroud called Plaintiff into a meeting and terminated his employment.  (Id.)  Izen told Plaintiff that he was being terminated because his work product was poor.  (Pl.'s Dep. 337:13-20, 338:6-8, Ex. 13; Doc. 29, ¶ 7.)  Izen also gave Plaintiff a Performance Improvement and Corrective Action Form ("Termination Form") that specified Plaintiff was being terminated based on his unsatisfactory work performance and the fact that Plaintiff had been "uncooperative, disrespectful, and combative with senior Kleinfelder Staff." (Id. at 323:18, 325:9-16, Ex. 13; Doc. 29, ¶ 7.)  Plaintiff reviewed the Termination Form and wrote "not true" next to the justification for his termination.[3]  (Id. at 324:14-325:16, Ex. 13; Doc. 29, ¶ 7.)

---

[2]    During Plaintiff's employment, Loftis was employed as Kleinfelder's Global Director of Renewable Energy.  (Doc. 30, ¶ 1.)  In that capacity, he was involved in the EverPower Project.  (Id. ¶ 3.)

[3]    On Plaintiff's separation paperwork, Izen referred to Plaintiff's termination as a lay-off.  (Doc. 29, ¶¶ 8, 9, Ex. A.)  Izen chose that characterization so Plaintiff would not have to disclose his performance-based termination to prospective employers.  (Id. ¶ 8, Ex. A.)  Izen also believed

Jackson Lewis LLP
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

Due to Plaintiff's aggressive behavior during the termination meeting, Izen ended the meeting and told Plaintiff that Stroud would escort Plaintiff to his office to gather a few personal belongings.  (Doc. 29, ¶ 7.)  Izen told Plaintiff to make arrangements with Stroud to come back after regular business hours to retrieve the rest of his personal belongings.  (Id.)  As they were leaving the termination meeting, Plaintiff showed Stroud a GPS unit and told Stroud that the unit had 100 culvert locations from the EverPower Project that had not yet been saved into the computer files.  (Doc. 34, ¶ 4; *see* Pl.'s Dep. 330:14-331:1.)  Stroud has no recollection of Plaintiff telling him that he had the handwritten culvert notes in his car. (Peter Stroud's Deposition ("Stroud Dep.") 79:19-80:7 attached hereto as Exhibit B to Oborne Decl.)

### C.    Plaintiff Attempts to Acquire Confidential Kleinfelder Information

The day of his termination and the day after, Plaintiff called Kleinfelder employees Stacie Steel ("Steel"), Mark Underhill ("Underhill"), and Kevin Wells ("Wells") and asked them to make him copies of Kleinfelder computer files.  (Pl.'s Dep. 333:19-334:17; Declaration of Stacie Steel in Support of Defendant's Motion for Summary Judgment ("Doc. 31") ¶ 4; Declaration of Kevin Wells in Support of Defendant's Motion for Summary Judgment ("Doc. 33") ¶ 4) Plaintiff asked Wells for information relating to the EverPower Project.[4]  (*See* Doc. 29, ¶ 12;

---

the characterization would help Plaintiff receive unemployment benefits.  (Id.)  Of note, Kleinfelder typically allows individuals who are laid off to reapply for any future openings.  (Id. ¶ 9.)  Since Plaintiff was terminated for his poor performance and behavior, however, he was deemed ineligible for re-hire on the separation report.  (Id., Ex. A.)

[4]    Although Plaintiff did not identify the files he requested from Wells as belonging to the EverPower Project, he asked that Wells copy files from a project Plaintiff had been working on. (Doc. 33 ¶ 4.)  Plaintiff told Wells the files were relevant to a project which had recently occupied a significant amount of his time and for which Plaintiff was responsible.  (Id.)  Wells understood that these files were associated with one of Kleinfelder's large projects and clients. (Id.)  Plaintiff asked that Wells hand him the downloaded copies when he came back to the office to retrieve his belongings, since he was going to take this work to a client and try to work with them directly.  (Id.)  Wells refused to copy the files for Plaintiff.  (Id.)  The next day, Wells

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 4

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

Doc. 33, ¶ 4.)  Such files are Kleinfelder's confidential property.  (Izen Decl. ¶ 15.)  Fortunately, all three employees refused to copy the files.  (Pl.'s Dep. 334:16-337:1; Doc. 31, ¶ 4; Doc. 31, ¶ 4.)

Shortly before 5:00 p.m. on February 3, 2010, Plaintiff called Stroud to coordinate the retrieval of his remaining personal belongings.  (Doc. 34, ¶ 5.)  When Plaintiff arrived a short time later, Stroud accompanied Plaintiff into Plaintiff's former office. (Pl.'s Dep. 342:4-6; Doc. 34, ¶ 5.)  Once in his office, Plaintiff grabbed what Stroud identified as a folded EverPower Project map belonging to Kleinfelder.  (Doc. 34, ¶ 5.)  Stroud was concerned Plaintiff was attempting to misappropriate confidential information, as Stroud knew Plaintiff had recently spent time collecting Project Notes, which are often written down on project maps, and he also knew that GPS information from the recent on-site visit had not yet been incorporated into the Kleinfelder computer system.  (Id.)  Stroud told Plaintiff the map belonged to Kleinfelder and that Plaintiff was not to take the map or any other Kleinfelder property.  (Id. ¶ 6.)  Plaintiff refused to return the map, telling Stroud it contained personal phone numbers.  (Pl.'s Dep. 343:24-344:7.)  Plaintiff also did not transfer the phone numbers to another piece of paper, after which a scuffle ensued when Plaintiff would not give the map to Stroud.  (Id. at 342:8-20, 345:22-346:4, 346:23-25; Doc. 34, ¶ 6.)  Despite being repeatedly told not to take Kleinfelder property, Plaintiff left with the Kleinfelder map.  (Pl.'s Dep. 345:4-20, 347:1-2, 353:12-15, Ex. 16; Doc. 34, ¶ 6.)  Stroud does not recall during this interaction Plaintiff ever informing him that he had the handwritten culvert notes in his car. (Stroud Dep. 79:19-80:7.)

---

informed Izen of his conversation with Plaintiff.  (Id. ¶ 6; Doc. 29, ¶ 12.)  Since Izen knew that prior to his termination Plaintiff had been spending the vast majority of his time on the EverPower Project, Izen concluded that the only files Plaintiff could have been seeking from Wells were the EverPower Project.  (Doc. 29, ¶ 12.)

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 5

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

The next morning, Izen and Stroud spoke with Kratz, who had accompanied Plaintiff to investigate culverts at the EverPower Project. (Doc. 29, ¶ 11; Doc. 34, ¶ 7; *see* Pl.'s Dep. 161:20-21.) Kratz confirmed that while on-site at the EverPower Project, Kratz saw Plaintiff handwriting field notes regarding the culverts on the project map. (Doc. 29, ¶ 11; Doc. 34, ¶ 7.) Kratz and Stroud searched for Plaintiff's Project Notes, but were unable to find them. (Id.) Plaintiff admits that he had handwritten culvert information in his personal possession at the time of his termination and never returned these culvert notes to Kleinfelder or to the police. (Pl.'s Dep. 307:16-20, 309:20-310:2, 348:16-21, 370:8-21, Ex. 19.) Izen also spoke with Steel, Underhill, and Wells on February 4, at which time he learned that Plaintiff had asked them to copy confidential Kleinfelder project files, including files relating to the EverPower Project. (Doc. 33, ¶¶ 4, 6; Doc. 31, ¶ 6; Doc. 29, ¶ 12.)

Based on Plaintiff's suspicious behavior in removing the Kleinfelder map, the fact that Kleinfelder was unable to locate the Project Notes, and the fact that Plaintiff had requested Kleinfelder project files from Kleinfelder employees, Izen believed that Plaintiff had not only taken the Kleinfelder map, but that the map Plaintiff had taken contained Plaintiff's Project Notes. (Doc. 29, ¶ 16.)

### D. The Police Reject Plaintiff's Claim Against Stroud and Instead Pursue Kleinfelder's Claim Against Plaintiff

On February 3, 2010, Plaintiff called the police and accused Stroud of assaulting him while he was removing his belongings (and the map) from the Kleinfelder offices. (Declaration of Officer Mandi DeFrain in Support of Defendant's Motion for Summary Judgment ("Doc. 28") ¶ 3) On February 4, 2010, after meeting with several Kleinfelder employees, the police refused to pursue the assault charge based on a lack of supporting evidence. (Id. ¶ 4.)

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

During the police investigation, Izen mentioned to the investigating officer that Plaintiff had taken a map that Izen believed contained Project Notes. (Doc. 28, ¶ 5; Doc. 29, ¶ 17.)  Izen also explained that Plaintiff had contacted several Kleinfelder employees in an attempt to obtain copies of confidential Kleinfelder information.  (Doc. 28, ¶ 5; Doc. 29, ¶ 18.)  The investigating police officer told Izen that if a report were filed, the police would return Plaintiff's personal property to Gordon and would also assume responsibility for securing the return of Kleinfelder's property.  (Doc. 28, ¶ 6; Doc. 29, ¶ 18.)  After discussing the incident with the investigating officer, Izen decided to press charges to obtain police assistance in retrieving Kleinfelder property. (Doc. 29, ¶ 19.)

After filing the report, the police asked Kleinfelder to tell EverPower that Plaintiff may have removed information from the Kleinfelder offices relating to the EverPower Project and that the police might be in contact with EverPower.  (Doc. 28, ¶ 8; Doc. 29, ¶ 20.)  As instructed, Loftis contacted David McClain ("McClain") at EverPower and said that Plaintiff may have removed some Kleinfelder information regarding the EverPower Project and that EverPower might be contacted by the police.  (Doc. 30, ¶ 8)  Loftis also mentioned to McClain that Plaintiff had been "let go."[5]  (Id.)  Loftis never told McClain that Plaintiff had been, or was going to be, arrested.  (Id.; Declaration of David McClain in Support of Defendant's Motion for Summary Judgment ("Doc. 32,") ¶ 6.)  In fact, McClain had no knowledge of Plaintiff's arrest until after Plaintiff commenced this litigation.  (Doc. 32, ¶ 6.)

---

[5]      Plaintiff asserts that Loftis told McClain that Plaintiff had been "terminated for cause." Plaintiff's assertions are based upon his recorded conversation with McClain.  This information is inadmissible hearsay.  FRE 801I, *see also Hickey v. Settlmier,* 318 Or. 196, 206, 864 P.2d 372 (1993) (the Oregon Supreme Court, following Oregon Rules of Evidence that mirror Federal Rules of Evidence, held that a reporter's hearsay statement of what the defendant had told the reporter was inadmissible to establish publication by the defendant of an allegedly defamatory statement).

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

Much to Loftis's surprise, McClain told him that Plaintiff had already been in contact with EverPower. (Doc. 30, ¶ 9; Doc. 32, ¶ 5.) According to McClain, Gordon assured EverPower that he was available to work directly with EverPower, thereby circumventing EverPower's relationship with Kleinfelder.  (Doc. 30, ¶ 9, Doc. 32, ¶¶ 4, 5.)  According to McClain, Plaintiff even represented that he possessed information necessary to complete the EverPower Project. (Id.)  Plaintiff concedes he told EverPower that he had in his possession notes about the culverts at the project site, and could use those notes to finish the EverPower Project.  (Pl.'s Dep. 308:19-309:4.)

### III.   LEGAL ARGUMENT

#### A.    Summary Judgment Standard

Summary judgment should only be granted if there are no genuine issues of material fact and Plaintiff is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).  The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial.  *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 800 F.2d 626, 630-31 (9th Cir. 1987).  In evaluating Plaintiff's motion for summary judgment all reasonable doubts as to the existence of genuine issues of material facts should be resolved against Plaintiff, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to Kleinfelder.  *See Id.* at 630.

#### B.    Plaintiff Cannot Establish His Defamation Claim As A Matter of Law

Plaintiff alleges Kleinfelder defamed him when Loftis supposedly told McClain that Plaintiff was fired for "cause," had been arrested and had stolen valuable information.[6]  (Compl.

---

[6]      Plaintiff also alleges in his supporting affidavit that Kleinfelder asserted that Plaintiff was not competent to perform the duties and responsibilities of his position as an engineer.  (Pl.'s

**Jackson Lewis LLP**
1001 SW 5th Ave., Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

¶ 9; Pl.'s Dep. 378: 14-19.)  Plaintiff also alleges Kleinfelder defamed him to potential employers.  (Compl. ¶ 9; Pl.'s Aff. ¶ 13.)  However, as detailed below, Plaintiff is not entitled to summary judgment on his defamation claim.

### 1.    There is No Evidence to Suggest, Let Alone Establish As A Matter Of Law, that Kleinfelder Defamed Plaintiff to EverPower

Plaintiff concedes his only knowledge of any defamatory statements is from a conversation he had with McClain that he recorded.  (Pl.'s Dep. 382:19-383:3.)  In that recording, McClain recounted some details of a prior conversation he had with Blair Loftis ("Loftis").  During the call with Plaintiff, McClain mentioned that Loftis said Plaintiff was fired by Kleinfelder for "cause."[7] (Declaration of Joanna Brody in Support of Defendant's Motion for Summary Judgment ("Doc. 27") ¶ 4, Ex. B, 3:12-13.)  Loftis, however, denies ever telling McClain that Plaintiff was fired for cause.  (Doc. 30, ¶ 8.)

Similarly, Plaintiff has failed to provide sufficient evidence establishing that Kleinfelder told McClain that Plaintiff was arrested or stole information.  Loftis did not mention that Plaintiff had been or was going to be arrested, or that Plaintiff had stolen valuable information.  (Doc. 30, ¶ 8.)  In fact, McClain had no knowledge of Plaintiff's arrest until Plaintiff commenced this litigation, and Loftis never told McCain that Plaintiff had stolen valuable information. (Doc. 32, ¶ 6.)  Instead, as instructed by the police, Loftis merely told McClain that Plaintiff *may* have been in possession of information relating to the EverPower project, that the police were

---

Aff. ¶ 13.)  Plaintiff, however, seems to have abandoned this argument in his Motion. Regardless, Kleinfelder never stated he was not a competent engineer.  Doc. 29, ¶ 24, Doc. 34, ¶ 9, Doc. 30, ¶¶ 8, 10.  Even Plaintiff' inadmissible transcript of his recording with McClain does not establish this.  *See* Pl. Aff., Ex. A.  Furthermore, Plaintiff was never an engineer with Kleinfelder, but instead was a senior designer.  (Pl.'s Dep. 78:8-10.)

[7]      As addressed in note 6 and below, McClain's statement is inadmissible hearsay.

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

involved, and that the police had instructed Kleinfelder to inform EverPower that the police might contact EverPower.  (Doc. 30, ¶ 8.)

> ### 2.    There Is No Evidence to Suggest, Let Alone Establish As A Matter Of Law, that Kleinfelder Defamed Plaintiff to Potential Employers

Plaintiff alleges Kleinfelder defamed him to prospective employers other than EverPower.  (Pl.'s Dep. 390:23-391:1; Pl.'s Aff. ¶ 13.)  However, Plaintiff testified that he only heard a "rumor" that he was being "bashed pretty hard" by Kleinfelder.  (Id. at 46:7-10.)  Plaintiff's affidavit also provides no supporting evidence but only conclusory statements based on the unsupported assertion that he did not receive a single acknowledgement of his applications only as the result of Kleinfelder's alleged defamatory statements to potential employers.  Such conclusory statements in an affidavit are not proper summary judgment proof. *Casey v. Lewis*, 4 F.3d 1516, 1527 (9th Cir. 1993) (Under Fed. R. Civ. P. 56, "[c]onclusory affidavits that do not affirmatively show personal knowledge of specific facts are insufficient."); *see* Fed. R. Civ. P. 56 (c)(4).  Plaintiff's lack of specificity as to the defamatory statements and the third-parties to whom these defamatory statements were supposedly made is insufficient, as a matter of law, to sustain a claim of defamation.  *See Strain v. Alcan Cable Corp.*, 2010 U.S. Dist. LEXIS 129698, *9-12 (D. Or. Dec. 3, 2010).   Other than Loftis' and Stroud's limited conversations with McClain about Plaintiff, Izen, Stroud, and Loftis have never spoken with any prospective employers about Plaintiff.  (Doc. 29, ¶ 24; Doc. 34, ¶ 9; Doc. 30, ¶ 10.)

> ### 3.    The Alleged Defamatory Statements Were True

"Truth is an affirmative defense to a defamation claim." *Blocker v. Wells Fargo Bank*, 2010 Dist. LEXIS 142501, *34 (D. Or. Nov. 23, 2010) (citing *Lansford v. Georgetown Manor,*

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

*Inc.*, 192 Or. App. 261, 270, 84 P. 3d 1105 (2004).  All of the alleged defamatory statements were true and therefore, Plaintiff's claim fails as a matter of law.

### a.    Plaintiff Was Indeed "Let Go"

The only admissible evidence regarding Loftis's statement to EverPower about the circumstances of Plaintiff's termination is that Loftis told McClain that Plaintiff had been "let go." (*See* Doc. 30, ¶ 8.)  Plaintiff's belief that Loftis said he was fired for cause is based entirely on an inadmissible hearsay statement from McClain that Plaintiff recorded.  FRE 801I; *see also Hickey*, 318 Or. at 206 (the Oregon Supreme Court, following Oregon Rules of Evidence that mirror Federal Rules of Evidence, held that a reporter's hearsay statement of what the defendant had told the reporter was inadmissible to establish publication by the defendant of an allegedly defamatory statement.)  In a sworn declaration, McClain affirmatively states that he does not recall whether or not Loftis said that Plaintiff was terminated for cause.  (Doc. 32, ¶ 7.)  There is no dispute that Plaintiff was indeed "let go," as that term simply conveys that his employment was involuntarily ended without implying whether the separation resulted from a lay-off or performance-based termination.

### b.    Kleinfelder's Statements to EverPower About the Missing Map and the Police Involvement Were True

Kleinfelder's statements to EverPower that Plaintiff may have removed some Kleinfelder information regarding the EverPower Project, that the police were involved, and that the police had instructed Kleinfelder to inform EverPower that they might be contacted by the police are all true.  (Doc. 28, ¶ 8; Doc. 29, ¶ 20)  The record establishes, and Plaintiff admits, that Plaintiff removed a map belonging to Kleinfelder from Kleinfelder's premises despite being told not to

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

remove the map. (Pl.'s Dep. 342:8-15, 347:1-2, 353:12-354:5.)[8]  The record also establishes, and

Plaintiff admits, that Plaintiff had the handwritten notes regarding the culverts on the EverPower

Project site in his personal possession.  (Id. at 307:16-20, 309:20-310:2, 348:16-21, 370:8-21,

Ex. 19.)  Further, it is undisputed that Kleinfelder was unable to locate this information.  (Doc.

34, ¶ 7.)  Finally, the record establishes that the police did ask Kleinfelder to tell EverPower that

Plaintiff may have removed information from Kleinfelder offices relating to the EverPower

Project and that the police might be in contact with EverPower.  (Doc. 28, ¶ 8; Doc. 29, ¶ 20.)

### 4. Kleinfelder's Statements to EverPower About Plaintiff Were Privileged

"An allegedly defamatory statement is subject to a qualified or conditional privilege if:

(1) it was made to protect the interest of the defendant; (2) it was made to protect the interests of

the plaintiff's employer; *or* (3) it was on a subject of mutual concern to the defendant and the

person to whom the statement was made." *Blocker v. Wells Fargo Bank,* 2010 U.S. Dist. LEXIS

142501, *35 (D. Or. Nov. 23, 2010) (emphasis added) (quoting *Affolter v. Baugh Construction*

*Oregon, Inc.*, 183 Or. App. 198, 204 (2002)).  Additionally, "[e]mployers have a legitimate

interest in free communications on matters related to work, especially when investigating

suspected wrongdoing by an employee." *Wallulis v. Dymowski*, 323 Or. 337, 350, 918 P.2d 755,

762 (1996).  Moreover, the Oregon Supreme Court has held that "a former employer has a

qualified privilege to make defamatory communications about the character or conduct of his

employee to present or perspective employers." *Walsh v. Consolidated Freightways,* 278 Or.

---

[8] Plaintiff's attempts to downplay his admission that he removed a map from Kleinfelder by
suggesting it was just a "section" of the map simply fall flat.  Plaintiff's divergent testimony is
contradicted by Stroud, who saw Plaintiff removing a folded map (Doc. 34, ¶¶ 5, 6) and Steel,
who saw Plaintiff remove a map folded into a small square. (Doc. 31, ¶ 5). At summary
judgment, such disputes should be construed in favor of Defendant, or at the very least foreclose
granting summary judgment in Plaintiff's favor.

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

347, 355, 563 P.2d 1205 (1977).    Whether a communication is conditionally privileged is a matter of law for the court to determine.    *McFarlin v. Gormley*, 2008 U.S. Dist. LEXIS 10541, *40 (D. Or. Feb. 12, 2008) (citing *Worley v. Oregon Physician's Serv.*, 69 Or. App. 241, 247-48, 686 P.2d 404 (1984)).

"A plaintiff may only overcome the qualified privilege if he can show that the defendant abused it.  If a defendant acts in good faith, without malice, there is no abuse of privilege." *Strain*, 2010 U.S. Dist. LEXIS 129698, at *11 (internal citations omitted) (Court granted summary judgment to employer since the employer had acted in good faith when it investigated the employee and then shared the results of its investigation with a third-party.)  "The burden of proving an abuse of the qualified privilege … rests upon the plaintiff." *Blocker,* 2010 U.S. Dist. LEXIS 142501, at *35 (quoting *Walsh*, 278 Or. at 356).

Here, the alleged defamatory statements are privileged.  Loftis simply told McClain that Plaintiff had been discharged, that he may have had some EverPower material and that EverPower might be contacted by the police.  Certainly, the statements were made to protect the interest of both Kleinfelder and EverPower.  EverPower had an interest in knowing that material it had paid to be created may have been misappropriated.  Kleinfelder, in turn, had an interest in being forthcoming with its customer, in complying with a police directive, and in attempting to facilitate the return of valuable property that it believed Plaintiff possessed.

This Court has recognized the privilege in similar circumstances.  In *Blocker*, for instance, this Court granted the employer's motion for summary judgment and held that an employer's statements to three of plaintiff's clients that their tax returns needed to be recalled by the I.R.S. due to possible fraud was a subject of mutual concern to the employer and to plaintiff's clients, and therefore made within the employer's privilege.  *Blocker*, 2010 U.S. Dist. LEXIS

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

142501, *36 (D. Or. Nov. 23, 2010).   In *McFarlin*, the plaintiff alleged the mayor had told a member of City Council that Plaintiff had a substance abuse problem, used drugs, had an anger management problem, was mentally unbalanced, and lunged at the city Finance Director. *McFarlin*, 2008 U.S. Dist. LEXIS 10541, at *39.  This court, in granting the mayor's motion for summary judgment, held that the mayor and the City Council member "enjoyed a conditional privilege to discuss plaintiff because plaintiff's tenure as police chief is clearly a subject of mutual concern to [the mayor] and [the member of City council]." *Id.* at *41.

Plaintiff has failed to introduce any admissible evidence showing an abuse of the qualified privilege, that is, that Kleinfelder acted in bad faith or with malice.  It is undisputed that Loftis told EverPower that Plaintiff "may" have removed some Kleinfelder information regarding the EverPower Project, and that the police were involved.   Loftis did not accuse Plaintiff of stealing the map or of being a thief.  Not only were his statements made in good faith, they were made at the direction of the investigating police officer.  Furthermore, even if Plaintiff could establish that he did not remove the missing Project Notes, which he cannot since he admitted to being in possession of such information, this is insufficient to establish that Kleinfelder acted with malice or knew that its conclusion that Plaintiff had taken the Project Notes was false.  (*See* Pl.'s Dep. 307:16-20, 309:20-310:2, 348:16-21, 370:8-21, Ex. 19.) Kleinfelder acted in good faith when it investigated the missing Project Notes and again when it concluded that Plaintiff had taken those notes, and Plaintiff has introduced no evidence to the contrary.  *See Strain,* 2010 U.S. Dist. LEXIS 129698 at *12 (since employer acted in good faith in investigating its employee, employee was unable to establish malice).

In sum, Plaintiff is unable to establish as a matter of law that Kleinfelder defamed him and therefore, summary judgment on this claim must be denied.

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

**C.    Plaintiff is Unable to Establish His Malicious Prosecution Claim As A Matter of Law**

In order to prevail on his malicious prosecution claim as a matter of law, Plaintiff must prove: (1) Kleinfelder initiated criminal proceedings against Plaintiff; (2) Kleinfelder acted out of a desire to harm Plaintiff rather than out of a desire to bring Plaintiff to justice; (3) Kleinfelder acted without probable cause; (4) Plaintiff was not guilty of the offense charged; (5) the criminal proceeding ultimately terminated in favor of Plaintiff; and (6) Plaintiff sustained injury or was damaged because of prosecution. *See Palominos v. Wal-Mart Stores, Inc.,* 2010 U.S. Dist. LEXIS 74050, *6 (D. Or. May 10, 2010) (*citing Gustafson v. Payless Drug Stores*, 269 Or. 354, 365, 525 P.2d 118 (1974)).  Plaintiff has failed to establish as a matter of law that Kleinfelder acted out of a desire to harm Plaintiff rather than out of a desire to bring Plaintiff to justice, or that Kleinfelder acted without probable cause. Therefore, Plaintiff is not entitled to summary judgment on his claim for malicious prosecution.

**1.    Plaintiff Cannot Establish That Kleinfelder Had the Requisite Malice in Filing a Criminal Complaint Against Plaintiff**

Plaintiff is not entitled to summary judgment because Plaintiff has produced no evidence that Kleinfelder acted out of a desire to harm Plaintiff, rather than out of a desire to have its property returned.  In fact, Plaintiff has failed to allege any malice on the part of Kleinfelder, let alone malice sufficient to establish Kleinfelder's improper intent as a matter of law.  Kleinfelder filed a police report against Plaintiff solely for the purpose of securing its property.  (Doc. 29, ¶ 19.)  There is no evidence that Kleinfelder filed the criminal complaint for a purpose, much less a "primary purpose," other than to secure the return of its property.  Accordingly, Plaintiff's cannot prevail on his motion for summary judgment.  *See Sabet v. Intel Corp.*, 2009 U.S. Dist. LEXIS 4922, *8 (D. Or. Jan. 22, 2009) ("[m]alice means 'the existence of a primary purpose

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

other than that of securing an adjudication of the claim.") (quoting *Perry v. Rein*, 215 Or. App. 113, 168 P. 3d 1163, 1170 (Or. Ct. App. 2007)).  Even if Kleinfelder was erroneous in its belief that Plaintiff had removed proprietary information, Plaintiff must still establish as a matter of law that Kleinfelder acted with an improper motive, and this he is unable to do.  *See Palominos*, 2010 U.S. Dist. LEXIS 74050 at *6.

### 2.    Kleinfelder Had Probable Cause to File a Criminal Complaint Against Plaintiff for Theft of Kleinfelder Property

Plaintiff is also unable to establish as a matter of law that Kleinfelder acted without probable cause, especially when all inferences to be drawn from the underlying facts must be viewed in the light most favorable to Kleinfelder.  *See T.W. Elec. Serv., Inc.*, 800 F.2d at 630-31. The existence of probable cause is a complete defense to a claim for malicious prosecution.  *See Rogers v. Hill*, 281 Or. 491, 497, 576 P.2d 328 (1978); *Gustafson*, 269 Or. at 356.  "The substance of all definitions of probable cause is a reasonable ground for belief of guilt." *Palominos*, 2010 U.S. Dist. LEXIS 74050 at *7 *quoting Maryland v. Pringle*, 540 U.S. 366, 371, 124 S. Ct. 795 (2003).

The record demonstrates that Kleinfelder had a reasonable belief that Plaintiff committed a crime when Plaintiff forcibly removed a Kleinfelder map from Kleinfelder property.  The following facts are undisputed:

- Plaintiff admitted that he had the handwritten notes regarding the culverts located on the EverPower Project site in his possession. (Pl.'s Dep. 156:4-157:22.)  These Project Notes were the valuable confidential property of Kleinfelder.  (Doc. 29, ¶ 16.)
- When Plaintiff returned to Kleinfelder to collect his belongings, he grabbed a map from the Kleinfelder office to take with him. (Pl.'s Dep. 347:1-2.)  Stroud, who was observing Plaintiff pack up his belongings, recognized the map as an EverPower Project map.  (Doc. 34, ¶ 5.)

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

- Plaintiff alleged he needed the map because of some personal numbers written down, yet he refused to transfer the numbers to another piece of paper and leave the Kleinfelder map behind. (Pl.'s Dep. 346:23-25, 363:13-22, Ex. 16.)

- Despite the fact that Stroud asked Plaintiff for the map, Plaintiff refused to give the map to Stroud. (Id. at 345:22-346:4; Doc. 34, ¶ 6.)

- Despite being told not to leave with any Kleinfelder property, Plaintiff left with the Kleinfelder map. (Id. at 347:1-2, Ex. 16.)

- Plaintiff admits that prior to his termination, he had the handwritten notes regarding the culverts located on the EverPower Project site in his car and never returned these notes to Kleinfelder or to the police. (Id. at 307:16-20, 309:20-310:2, 348:16-21, 370:8-21, Ex. 19.)  Plaintiff admits that these notes could have been used to finish the EverPower Project. (Id. 309:2-4.)

- After Plaintiff left Kleinfelder with the map, Stroud and others searched for the missing Project Notes but were unable to find them. (Doc. 34, ¶ 7; Doc. 29, ¶ 11.)

- Before filing a report with the police, Kleinfelder knew that Plaintiff had called several Kleinfelder employees in an attempt to retrieve copies of confidential Kleinfelder information, including information about the EverPower Project. (Doc. 29, ¶¶ 12-15; Doc. 31, ¶ 6; Doc. 33, ¶¶ 4, 6.)

These facts alone constitute probable cause to believe that Plaintiff had taken a map that contained proprietary information regarding the EverPower Project.  *See Palominos*, 2010 U.S. Dist. LEXIS 74050, at *7.  Even assuming the map did not have proprietary information and only contained Plaintiff's personal phone numbers, Kleinfelder's suspicions about the missing Project Notes were reasonable, since Plaintiff indeed had the missing handwritten culvert notes in his possession and never returned them to Kleinfelder. (Pl.'s Dep. 307:16-20, 309:20-310:2, 348:16-21, 370:8-21, Ex. 19.)[9]  Since probable cause is a complete defense to a claim for malicious prosecution, and since all inferences must be viewed in favor of Kleinfelder, Plaintiff

---

[9] Plaintiff claims that on February 3, he offered to return the notes to Stroud.  Pl's Aff. at ¶ 6. However, Stroud has no recollection of this.  (Stroud Depo at 79:19-80:7), filed herewith.  While Defendant's acknowledge that by letter from Plaintiff's counsel on February 11, 2010 Plaintiff did offer to return these notes to Kleinfelder, the letter is not dispositive at summary judgment. Viewing the facts in the light most favorable to the non-moving party, Defendant reasonably believed at the time it made its police report that there was probable cause to suspect Plaintiff took Kleinfelder's property.

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

is unable to fulfill his burden as to each element of his claim, and is therefore not entitled to summary judgment as a matter of law.  *See Gustafson*, 269 Or. at 356; *T.W. Elec. Serv., Inc.*, 800 F.2d at 630-31.

### D.    Plaintiff is Unable to Establish As A Matter of Law That Kleinfelder Converted His Property

Plaintiff moves for summary judgment based on his allegations that Kleinfelder converted his personal address book and information on his D:drive from his work computer which allegedly contained his resume and his portfolio of CAD drawings.  (Pl.'s Mot. at 4-5.) Under Oregon law, the tort of conversion is defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Becker v. Pac. Forest Indus.*, 229 Or. App. 112, 116, 211 P.3d 284 (2009) (citing Restatement (Second) of Torts § 222A (1965) *adopted by Mustola v. Toddy*, 253 Or. 658, 664, 456 P.2d 1004 (1969).  "[T]he gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights." *Naas v. Lucas*, 86 Or. App. 406, 409, 739 P.2d 1051 (1987) (*modified on other grounds,* 88 Or. App. 141, 744 P.2d 586 (1987)) (citations omitted).  Conversion results only from intentional conduct.  *See In re Wyllie*, 331 Or. 606, 620, 19 P.3d 338 (2001).

Conversion requires a knowing exercise of control that Plaintiff has failed to demonstrate.  No reasonable inference can be drawn from the record before this Court to indicate that Kleinfelder knowingly exercised dominion and control over Plaintiff's belongings.  *See Castle v. Orenco Sys.*, 2010 U.S. Dist. 129702, *10 (D. Or. Dec. 3, 2010).  Since Plaintiff cannot establish that Kleinfelder intended to exercise control over Plaintiff's address book, and because

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 18

Plaintiff had no right to control the data on his work computer, which indisputably belonged to Kleinfelder, Plaintiff is not entitled to summary judgment on his conversion claim.

### 1.    Kleinfelder Does Not Have Control Over Plaintiff's Address Book

Kleinfelder does not have Plaintiff's personal address book in its possession, nor does it have knowledge of ever having possession of the address book. (Doc. 29, ¶ 22.) Once Plaintiff was terminated, Izen boxed up Plaintiff's office and sent several boxes of Plaintiff's belongings to his home. (Id. ¶ 21.) Whatever remained of Plaintiff's belongings in Plaintiff's office was given to the investigating officers on February 4, 2010. (Id.; Doc. 28, ¶ 9.) The police told Kleinfelder that they would be responsible for returning Plaintiff's remaining belongings to him. (Doc. 29, ¶ 18; Doc. 28, ¶ 6.) Kleinfelder has searched its offices for Plaintiff's personal address book and as far as Kleinfelder is aware it is not in Kleinfelder's possession. (Doc. 29, ¶ 22.) Furthermore, Kleinfelder has never had any intent to exercise control over Plaintiff's address book. (Id.) Since Plaintiff is unable to establish the requisite intent, or even that Kleinfelder ever possessed his address book following his termination, Plaintiff cannot prevail as a matter of law with respect to the address book. *See Naas*, 86 Or. App. at 409.

### 2.    Plaintiff Does Not Have a Right of Control Over Any Data on His Kleinfelder Work Computer

Plaintiff did not own any of the computer files at issue, and therefore his claim of conversion of his computer documents and CAD files is without merit. Conversion is an act of dominion, wrongfully exerted, inconsistent with the plaintiff's property right. *Gowin v. Heider*, 237 Or. 266, 304, 386 P.2d 1 (1964). Plaintiff, however, had no property right in data located on the Kleinfelder computers and the work product he created for Kleinfelder. First, pursuant to Kleinfelder's computer policy, which was given to Plaintiff as part of his hire packet, all data

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

composed on or sent using Kleinfelder computer "are the property of Kleinfelder.  They are not the private property of any employee."  (Pl.'s Dep. 388:22-390:1, Ex. 21.)

Second, the documents Plaintiff is seeking, including any CAD files on the D:drive belonged to Kleinfelder because they were the result of Plaintiff's work product for Kleinfelder.  *See* Pl.'s Dep. 383:10-387:10.  Plaintiff has no property right in the work product he created for Kleinfelder, since the work product of an employee is owned by the employer and not the employee.  *See Justmed, Inc. v. Byce*, 600 F. 3d 1118, 1131 (9th Cir. 2009).

Finally, in his deposition, Plaintiff admits that the documents he is seeking were used for Kleinfelder clients and Kleinfelder's marketing efforts.  Plaintiff edited documents he had placed on Kleinfelder's computer for use in various Kleinfelder projects and to market future projects to Kleinfelder clients. (Pl.'s Dep. 386:14-387:10.)  According to Plaintiff, his manager requested that Plaintiff create work for marketing: "they needed something that they could put in their marketing. So I had to rework [the documents] – and make it fit to what we were going after … I needed to edit them to fit the marketing tool."  (Id. at 386:19-387:10.)  Such work product belongs to Kleinfelder.  *See Justmed*, 600 F. 3d at 1131.

Further, Kleinfelder has no knowledge regarding Plaintiff's allegation that one of the inducements for Kleinfelder to hire Plaintiff was his portfolio of CAD drawings.  (Declaration of Abe Izen ("Izen Decl.") ¶ 3; Declaration of Peter Stroud ("Stroud Decl.") ¶ 3.)  Plaintiff's position was not one that would require a portfolio of CAD drawings.  (Id.)  Kleinfelder disputes Plaintiff's allegation that Kleinfelder requested that he transfer this information onto his office computer, as this was not standard especially for an employee of Plaintiff's status.  (Id.)[10]

---

[10] Furthermore, Plaintiff has not established whether Plaintiff's so-called "portfolio of CAD drawings existed at all on his computer.   Despite its best efforts to obtain all of Plaintiff's personal files from his work computer, Defendant could not locate the so-called files.  Izen Decl.

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

Since Plaintiff had no property right in the documents located on his D:drive, Plaintiff cannot establish that he is entitled to judgment as a matter of law on his conversion claim.

### E.    Defendant Has Adduced Evidence Raising An Issue of Fact As To Its Conversion Claim

Plaintiff moves for summary judgment on Kleinfelder's counterclaim that Plaintiff converted Kleinfelder's property.  (Pl.'s Mot. at 5; Def.'s Am. Counterclaim ¶¶ 11-13).  Under Oregon law, the tort of conversion is defined as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Becker v. Pac. Forest Indus.*, 229 Or. App. 112, 116, 211 P.3d 284 (2009) (citing Restatement (Second) of Torts § 222A (1965) *adopted by Mustola v. Toddy*, 253 Or. 658, 664, 456 P.2d 1004 (1969).  "[T]he gravamen of the tort is the defendant's intent to exercise control over the chattel inconsistently with the plaintiff's rights." *Naas v. Lucas*, 86 Or. App. 406, 409, 739 P.2d 1051 (1987) (*modified on other grounds,* 88 Or. App. 141, 744 P.2d 586 (1987)) (citations omitted).

Plaintiff's only argument in support of his motion for summary judgment is that "plaintiff has sworn that he took no map containing any data or proprietary information, and defendant cannot legitimately contradict that evidence." (Pl.'s Mot. at 5.)  This statement is insufficient for several reasons.  First, Kleinfelder disputes this alleged fact.  Kleinfelder disputes the document Plaintiff gave to the police department was the map that Plaintiff removed from the Kleinfelder offices.  (Doc. 34, ¶ 10.)  Stroud, Project Manager of the EverPower Project, saw Plaintiff grab what Stroud identified as a folded EverPower Project map — which is different than the document Plaintiff gave to the police.  (Id. ¶¶ 5, 10.)  This dispute of material fact is sufficient to

---

¶ 4.  As a matter of fairness, demonstrable proof that Defendant was even aware of the item allegedly stolen from Plaintiff should foreclosure granting summary judgment in favor of the Plaintiff on this claim.

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

deny Plaintiff summary judgment on this counterclaim.  Second, the value of the map has no

bearing on whether Plaintiff converted Kleinfelder's property.  Even assuming the map had no

proprietary information and only contained Plaintiff's personal phone numbers, Plaintiff still

converted Kleinfelder property,[11] as he intentionally exercised control over a document that did

not belong to him and despite being told not to leave the premises with the map.  *See Becker*, 229

Or. App. at 116; Stroud Decl. ¶6.

　　　　Finally, Plaintiff's exercise of dominion and control over the handwritten culvert notes

creates a triable issue as to Defendant's conversion claim.  Plaintiff himself admits that he had

the handwritten culvert information in his personal possession at the time of his termination and

did not return these culvert notes to Kleinfelder until requested to do so in discovery in the

instant matter.  (Pl.'s Dep. 307:16-20; 309:20-310:2, 348:16-21, 370:8-21, Ex. 19.)[12]  This

handwritten culvert information was the valuable property of Kleinfelder, and Plaintiff

intentionally exercised "dominion or control over [the map] which so seriously interfere[d] with

the right of [Kleinfelder] to control it …" *See Becker*, 229 Or. App. at 116; *See also* Doc. 29, ¶

16.  Plaintiff cannot establish as a matter of law that he did not convert Kleinfelder property and

is not entitled to summary judgment on this claim.

---

[11]　　　Plaintiff in his affidavit makes the conclusory statements that the map he took was a
public map and all data generated as part of Kleinfelder's work for EverPower was the property
of EverPower. (Aff. ¶¶ 4, 8.)  First, Plaintiff has abandoned these arguments in his Motion.
Additionally, both of these conclusory statements are insufficient for purposes of summary
judgment. *See Casey*, 4 F.3d at 1527; Fed. R. Civ. P. 56(c)(4). Furthermore, both of these
statements are false.  The map he took was an EverPower Project Map that was based on a
publicly filed map, but contained Kleinfelder's confidential proprietary information for
Kleinfelder's contract with EverPower. (Stroud Decl. ¶ 4.)  Kleinfelder maintains a proprietary
interest in all of its work, even if at times, that proprietary interest is shared with its clients.
(Stroud ¶ 5.)  In addition, under its contract with EverPower, Kleinfelder was required to
maintain a copy of its work. (Stroud Decl. ¶ 5). To the extent Plaintiff took the only copy of the
project map, he made it impossible for Kleinfelder to fulfill its contractual obligations to
EverPower.

[12]　　　As acknowledged above in note 9 *supra*, there is also a dispute as to when Plaintiff
offered to return the culvert notes.

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

**F.   Defendant Has Adduced Evidence Raising An Issue of Fact As To Its Breach Of Contract Claim**

Plaintiff moves for summary judgment on Kleinfelder's counterclaim that Plaintiff breached his Employee Covenants Agreement ("Agreement") with Kleinfelder.  (Pl.'s Mot. at 5; Def.'s Am. Counterclaim ¶¶ 14-17.)   To properly state a claim for breach of contract under Oregon law, a party must allege (1) the existence of a contract, (2) the relevant terms of the contract, (3) the party's full performance and lack of breach, and (4) the other party's breach. *Henin v. Bank of Am. Home Loan Servicing*, 2011 U.S. Dist. LEXIS 47604, *8-9 (D. Or. May 3, 2011) (citing *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 927 P.2d 1098 (Or. Ct. App. 1996)).

Kleinfelder has introduced admissible evidence sufficient to withstand Plaintiff's motion. Plaintiff does not dispute the existence of the Agreement, the relevant terms of the Agreement, or Kleinfelder's full performance and lack of breach.  (*See* Pl.'s Mot. at 5.)  Instead, Plaintiff's only argument is that "plaintiff's Affidavit establishes that he made no such breach, and defendant cannot contradict that assertion." (Id.) This is simply untrue.   The record before this Court establishes that Plaintiff breached the Agreement, especially when considering that all reasonable doubts as to the existence of genuine issues of material fact should be resolved against Plaintiff and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to Kleinfelder.  *See T.W. Elec. Serv., Inc.*, 800 F.2d at 630-31.

On April 15, 2008, Kleinfelder and Plaintiff entered into the Agreement which contained confidentiality, non-solicitation, and non-disparagement clauses. (Pl.'s Dep., Ex. 4.)   The confidentiality clause stated that after termination of Plaintiff's employment Plaintiff would: (1)

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

"not disclose or use Confidential Information[13] for his/her personal benefit … or in any manner adverse to the interests of [Kleinfelder]"; (2) "return all materials containing or relating to Confidential Information to the Company when his/her employment relationship with the Company terminates", and; (3)"not retain any copies or reproductions of … notebooks … or documents … of any kind relating in any way to the business of [Kleinfelder], [or] its clients …" (Id. at 1.)  The non-solicitation clause stated that after the termination of Plaintiff's employment, Plaintiff would "not, directly or indirectly … contact, communicate, or solicit … any person that is … a client of [Kleinfelder] … for the purpose of inducing such client or potential client to be connected to or benefit from any business competitive with that of [Kleinfelder] …" (Id. at 2.) Finally, the non-disparagement clause stated that Plaintiff would "not at any time (during or after [Plaintiff's] employment with [Kleinfelder]) disparage the reputation of [Kleinfelder] … or [its] employees." (Id.)  Plaintiff breached all of the above contractual provisions.

First, Plaintiff breached the confidentiality clause.  When Plaintiff contacted McClain about obtaining a job directly with EverPower, Plaintiff concedes he told EverPower that he had in his possession notes about the culverts at the project site, and could use those notes to finish the EverPower Project.  (See Pl.'s Dep. 308:19-309:4.) These notes about the culverts were Confidential Information and could not be used for Plaintiff's "personal benefit" in obtaining employment "or in any manner adverse to the interests of [Kleinfelder]."  (Pl.'s Dep. Ex. 4 at 1; see Stroud Decl ¶¶ 4, 5)  Further, Plaintiff admits that after his termination he did not return this Confidential Information that was in his personal possession, and instead retained this

---

[13]    The Agreement defines Confidential Information as including "all trade secrets, know-how, technical, operating, financial, and other business information, specifically including but not limited to information regarding documentation, designs, inventions, improvements, methodologies, concepts, records, files, memoranda, reports, plans, price lists, client and supplier information, product development and product procedures." (Pl.'s Dep. Ex. 4, p. 1.)

**Jackson Lewis LLP**
1001 SW 5th Ave, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

information, which was in violation of the Agreement's confidentiality clause. (*See* Pl.'s Dep. 307:16-20; 309:20-310:2, 348:16-21, 370:8-21, Ex. 19.)[14]

Plaintiff also breached the non-solicitation clause. Plaintiff contacted EverPower, a Kleinfelder client, and solicited work from EverPower. Plaintiff told EverPower that he would "like to work for them", and in fact possessed information necessary to complete the EverPower Project, thereby circumventing EverPower's relationship with Kleinfelder.[15] (Pl.'s Dep. 300:9-17; McClain Decl. ¶¶ 4, 5.)

Finally, Plaintiff breached the non-disparagement clause by not only disparaging Kleinfelder, but by also disparaging Kleinfelder employee Paul Fisher ("Fisher"). Plaintiff admits that when he met with McClain at EverPower, he told McClain that he "didn't know how the job was going to get done" and that Kleinfelder had "burned the budget and were looking to charge [EverPower] more money for work that we, for scope that was already, we had already been paid for … And I told him that I had had the conversations with the project manager, that we were already paid to do this work and that they didn't care and that they were going to try to charge him for more work."[16] (Pl.'s Dep. 299:6-18; 305:24-306:14.) Plaintiff also admits that he told McClain that Fisher, a Kleinfelder employee, was not very good at his job and that he "doesn't know anything about the job … [and that] there's a lot of data interpretation that he will

---

[14] As acknowledged above in note 9 *supra*, there remains a dispute as to when Plaintiff offered to return the culvert notes.

[15] Plaintiff contradicts himself in his subsequent affidavit, where he affirmatively states that he has "not solicited to any client of defendant." (Aff. ¶ 15.) Based on Plaintiff's earlier testimony, this is simply not true. (*See* Pl.'s Dep. 300:9-17, 308:19-309:4.)

[16] Plaintiff also admits he told EverPower that that Kleinfelder was "planning on charging [EverPower] for stuff, for items that are already included in the budget and I told them that [Kleinfelder] had burned the budget by bringing in Paul Fisher." (Pl.'s Dep. 300:18-23.)

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

not be able to do without my help." (Pl.'s Dep. 299:6-10, 299:19-300:1; (Id. 300:2-4.).)  Not only

were these comments blatantly false, but they were disparaging to Kleinfelder and Fisher, and

therefore were in violation of the Agreement.

Given his burden as movant for summary judgment and the record before this Court,

Plaintiff is unable to establish that he did not breach his Agreement with Kleinfelder as a matter

of law.  Summary judgment on this claim must be denied.

### G.     There is Dispute of Fact As To Defendant's Oregon Uniform Trade Secrets Act Claim

Plaintiff also moves for summary judgment on Kleinfelder's counterclaim that Plaintiff's

misappropriated Kleinfelder's trade secrets in violation of O.R.S. 646.461(2) of the Oregon

Uniform Trade Secrets Act (the "UTSA").  (Def.'s Am. Counterclaim ¶¶ 18-23.)  Plaintiff's only

support for his motion is his personal statement denying that he removed a map containing

confidential proprietary information, and that at no time since his termination has he retained

confidential information belonging to Kleinfelder.[17]  (Pl.'s Mot. at 5.)  The record before this

Court however, establishes that these allegations are disputed and are, in part, contrary to

Plaintiff's earlier testimony.

To establish a claim under the UTSA: (1) the subject of the claim must qualify as a

statutory trade secret; (2) the plaintiff must employ reasonable measures to maintain the secrecy

of its trade secrets; and (3) the conduct of the defendant must constitutes statutory

---

[17]     Plaintiff makes the specious and conclusory allegation in his affidavit that any information relating to the EverPower Project belonged to EverPower.  Plaintiff has provided no proof to support this conclusion, and such a conclusory allegation is insufficient for summary judgment.  Furthermore, this allegation is false.  Kleinfelder maintains a proprietary interest in all of its work, even if at times, that proprietary interest is shared with its clients. (Stroud ¶ 5.)

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 26

misappropriation.[18] *See AcryMed, Inc. v. ConvaTec*, 317 F. Supp. 2d 1204, 1217 (D. Or. 2004) (court denied defendant's motion for summary judgment on its claim under the Act) *citing W. Med. Consultants, Inc. v. Johnson*, 835 F. Supp. 554 (D. Or. 1993).

As already demonstrated, genuine issues of material fact exist with regard to whether Plaintiff removed a confidential proprietary map.   Stroud saw Plaintiff grab what Stroud identified as a folded EverPower Project map. (Doc. 34, ¶ 5.)   Stroud, in his role as Project Manager for the EverPower Project, believed this EverPower Project Map contained information on the culverts located at the EverPower Project site. (Id.)   The Project Map was the valuable confidential property of Kleinfelder, and contained Kleinfelder trade secrets.  (Doc. 29, ¶ 16; *see* Stroud Decl. ¶ 4.)   Furthermore, Kleinfelder disputes the allegation that the map Plaintiff improperly removed was only a portion of an old map, and that the portion of a map that Plaintiff turned over to the police was the same map that Gordon removed from the Kleinfelder offices. (Doc. 34, ¶ 10.)

Furthermore, Plaintiff admits to retaining the handwritten culvert information in his personal possession at the time of his termination and that he never returned these culvert notes to Kleinfelder or the police.[19]   (Pl.'s Dep. 307:16-20, 309:20-310:2, 348:8-21, Ex. 19.)   The handwritten culvert notes were the valuable confidential property of Kleinfelder, and contained Kleinfelder trade secrets.  (Doc. 29, ¶ 16; *see* Stroud Decl. ¶¶ 4, 5.)   Not only did Plaintiff concede he told EverPower that he had in his possession notes about the culverts at the project site, he informed them he could use those notes to finish the EverPower Project. (Pl.'s Dep.

---

[18]       O.R.S. 646.641 defines "misappropriation" as the improper acquisition, disclosure or use of a trade secret. *See* ORS 646.641.

[19]       Kleinfelder disputes Plaintiff's allegations that he ever informed Stroud that he had the handwritten culvert information in his car (Stroud Dep. at 79:19-80:7) or that Kleinfelder had a propriety interest in the project notes. (Stroud Decl. ¶ ¶ 4, 5.)

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

308:19-309:4.)  Considering a dispute of material fact exists with respect to whether Plaintiff removed a confidential proprietary map from Kleinfelder and Plaintiff's admitted actions with respect to the confidential culvert notes, Plaintiff is unable to demonstrate that he is entitled to summary judgment as a matter of law on Kleinfelder's counterclaim against Plaintiff under the UTSA.  *See AcryMed, Inc.*, 317 F. at 1217.

### H.    There is An Issue of Fact As To Defendant's Defamation Claim

Plaintiff moves for summary judgment on Kleinfelder's counterclaim that Plaintiff defamed Kleinfelder when he falsely informed EverPower that Kleinfelder had been overcharging EverPower for work.  (Pl.'s Mot. at 5; Def.'s Am. Counterclaim ¶¶ 9-10, 24-27.) Plaintiff does not dispute that he made this statement about Kleinfelder to EverPower, but contends only that his statement was not false. However, this material fact is disputed by Kleinfelder.

To establish a prima facie defamatory claim, Kleinfelder must present evidence sufficient to show that Plaintiff published a defamatory statement about Kleinfelder, to a third party. *Hutchinson v. Menlo Logistics, Inc.*, 2006 U.S. Dist. LEXIS 1957, (D. Or. 2006).  A defamatory statement is one that would "tend to diminish the esteem, respect, goodwill or confidence in which [the other] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the other]." *Affolter v. Baugh Construction Oregon, Inc.*, 183 Or. App. 198, 202-03, 51 P.3d 642 (2002) (internal citations omitted). For purposes of Plaintiff's motion for summary judgment, Kleinfelder has established that Plaintiff defamed Kleinfelder.

Plaintiff admits that he told McClain at EverPower that Kleinfelder had "burned the budget and were looking to charge [EverPower] more money for work that we, for scope that was already, we had already been paid for … And I told him that I had had the conversations

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 28

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)

with the project manager, that we were already paid to do this work and that they didn't care and that they were going to try to charge him for more work." (Pl.'s Dep. 299:6-18; 305:24-306:14.) These statements to EverPower were false, were defamatory, and prejudiced Kleinfelder in its trade or profession.[20]  Kleinfelder did not "burn" the budget for the Coyote Crest Project; at no point was Kleinfelder "looking to charge [EverPower] more money" for the scope of work than had already been agreed upon; at no point did Plaintiff ever discuss these allegations with Stroud, the Project Manager; at no point did Stroud not care about Plaintiff's alleged comments; and at no point was Kleinfelder going to try to improperly charge EverPower for more work. (Stroud Decl. ¶ 6.)  Since it is disputed whether Gordon's statements were true, Plaintiff is not entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

---

[20]     Since Plaintiff's defamatory statements to EverPower regarded Kleinfelder's profession and its ability to perform its business duties, the statements were defamatory *per se* and Kleinfelder does not need to allege specific damages. *See Cook v. Safeway Stores, Inc*., 266 Or. 77, 82, 511 P.2d 375 (1973); *L&D of Oregon v. American States Insurance Co*., 171 Or. App. 17, 24, 14 P.3d 617 (2000).

DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT - 29

## IV.  CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment should be denied in its entirety.

Dated this 13th day of January, 2012.

JACKSON LEWIS LLP

By:    s/*Scott Oborne*
        Scott Oborne, OSB #062333
        Joanna R. Brody, OSB #102034
        503-229-0404
        Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on January 13, 2012, I electronically filed the foregoing **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which will send notification to the following:

Daniel C. Lorenz
Attorney at Law
521 SW Clay
Portland, OR 97201
attydcl@aol.com

DATED the 13th day of January, 2012 at Portland, Oregon.

s/*Julie Dod*
Julie Dod

4840-1806-9518, v. 2

**Jackson Lewis LLP**
1001 SW 5th Avenue, Ste. 1205
Portland, OR 97204
(503) 229-0404
(503) 229-0405 (fax)